**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THOMAS EDWARD WILSON, | |
| Petitioner, | 2:98-cv-01174-GMN-PAL |
| vs. | **ORDER** |
| TIMOTHY FILSON,[1] *et al.*, | |
| Respondents. | |

Respondents have filed a motion to dismiss / motion for summary judgment (ECF No. 143) with respect to petitioner Wilson's third amended petition for writ of habeas corpus (ECF No. 134). Respondents argue that claims in the petition are procedurally barred, fail to state a claim upon which relief can be granted, and/or are time barred. Respondents also contend that Wilson's entire petition was filed beyond the one-year statute of limitations under 28 U.S.C. 2244(d). In addition, respondents argue that they are entitled to summary judgment on certain claims because Wilson failed to develop supporting facts in state court.

I. BACKGROUND[2]

In October 1979, Wilson entered a guilty pleas in the state district court for Washoe County,

---

[1] Timothy Filson is substituted for his predecessor, Renee Baker, as Warden of Ely State Prison. Fed. R. Civ. P. 25(d).

[2] The information in this section is derived from the exhibits filed with respondents' motion (ECF Nos. 144-157) and this court's docket for this case.

Nevada, to charges of first-degree murder, robbery with the use of a deadly weapon, and kidnaping with the use of a deadly weapon. In December 1979, a three-judge panel sentenced him to death.

After the state district court denied his motion to withdraw his plea, Wilson appealed his judgment of conviction and sentence. The Nevada Supreme Court entered an order affirming both in 1983 and an order denying rehearing in 1985. In December 1986, Wilson filed his first state petition for post-conviction relief. That proceeding concluded in March 1989 when the Nevada Supreme Court affirmed the lower court's decision denying him relief. Wilson filed his first federal petition for a writ of habeas corpus in June 1989 (case no. CV-S-89-432).

In December 1992, this court dismissed Wilson's mixed federal petition (i.e., a petition containing exhausted and unexhausted claims) and instructed him to file a new federal petition within 30 days of completing state court exhaustion proceedings. Wilson filed a state court petition in March 1993. That petition was dismissed by the state district court. In April 1998, the Nevada Supreme Court dismissed Wilson's appeal of that decision, upholding the state district court's conclusion that the petition was barred as successive.

In August 1998, Wilson filed a habeas petition in this court under case number CV-S-89-432, which the court re-designated as case number CV-S-98-1174 (i.e., the instant case). In September 2005, this court granted Wilson a stay to allow him to exhaust his claims under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *McConnell v. State*, 102 P.3d 606 (Nev. 2004).

The state district court dismissed Wilson's subsequent state petition as untimely and successive. Wilson appealed that decision and also filed yet another petition in the state district court, this time raising a claim under *Byford v. State*, 994 P.2d 700 (Nev. 2000), and *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007). The Nevada Supreme Court affirmed the dismissal of the former petition in October 2011 and the dismissal of the *Byford/Polk* petition in September 2014, in both instances upholding the lower court's conclusion that the petitions were barred as untimely and successive.

1 | After this court lifted the stay in March 2015, Wilson filed, in May 2015, a third amended petition, which is the subject of respondents' motion to dismiss.

## II. DISCUSSION

### 1. *Procedural default*

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test

for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id*. at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

Respondents argue that this court is procedurally barred from considering any claim that Wilson did not present in his direct appeal or in his first state post-conviction proceeding. Specifically, respondents contend that the following claims are procedurally defaulted: 1(A), 1(B), 1(C), 1(D), 1(E) (a, c, f, g, h, j, l, m, n, o, p, q, r, t, u, v, w, x, z, aa, bb, cc, gg (save for the allegations regarding co-defendant Stites), hh, jj, kk, ll (save for the allegations regarding establishing mitigating evidence), mm, and nn), 2(A), 2(B), 2(C), 2(D), 3, all of 4 including 4(A) and 4(B), 5, 6, 7, 8, 9(A), 9(B) (save for the general allegation that counsel did not present general, unspecified mitigation evidence from family members), 9(C), 9(D), 9(E), 9(G), 10(A), 10(B) (save for allegations regarding unadjudicated criminal conduct as sentencing as an Eighth amendment claim), 11, all of 12 including 12(A) and 12(B), all of 13 including 13(A) and 13(B), 14, all of 15, 16(A), 16(B), 16(C), 17(A), 17(B), 18, 19, 20, 21 (as to any allegations regarding the Nevada Supreme Court), 22, 23, 24, 25, 26, 27, 28, 29, and 30.

To contest the adequacy of Nev. Rev. Stat. § 34.810 as a procedural bar at the time of his default,[3] Wilson cites the Ninth Circuit's decisions in three Nevada capital cases – *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002); *Petrocelli v. Angelone*, 248 F.3d 877, 886-87 (9th Cir.

---

[3] The parties agree that 1986 to 1989 (the time during which Wilson was litigating his first state post-conviction proceeding) is the relevant period for analyzing the adequacy of this particular bar. ECF No. 143, p. 77; ECF No. 171, p. 42.

4

2001); and *McKenna v. McDaniel*, 65 F.3d 1483, 1487-89 (9th Cir. 1995). The relevant dates in *McKenna* and *Petrocelli* were 1983 and 1985. *See McKenna*, 65 F.3d at 1487-88; *Petrocelli*, 248 F.3d at 886. The court in *Valerio* found that the bar was inadequate as of 1990. *Valerio*, 306 F.3d at 778. By citing to these cases, Wilson has carried his burden under *Bennett*. *See King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006). Moreover, under the *Bennett* rubric, the respondents are foreclosed from carrying their ultimate burden because the Ninth Circuit has already concluded that the bar was inadequate during the relevant time period. *See id.* ("Once we have found a state procedural rule to be inadequate, petitioners may fulfill their burden under *Bennett* by simply challenging the adequacy of the procedure; the burden then shifts back to the government to demonstrate that the law has *subsequently* become adequate." (Emphasis added.)).

Respondents argue, however, that the Ninth Circuit's adequacy determinations in *Valerio*, *Petrocelli*, and *McKenna* are irreconcilable with the Supreme Court's subsequent decisions in *Beard v. Kindler*, 558 U.S. 53 (2009), and *Walker v. Martin*, 562 U.S. 307 (2011), because the Supreme Court in those cases rejected the notion that a state court's discretionary application of procedural rule will necessarily render it an inadequate ground to bar federal review. This court agrees that *Beard* and *Walker* call into question the Ninth Circuit's holdings in the cases Wilson cites. *See Beard*, 558 U.S. at 60-61 (holding that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review," because it can be considered "firmly established") and *Walker*, 562 U.S. at 320 (explaining that a rule is not automatically inadequate "upon a showing of seeming inconsistencies" and that state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule"). Even so, this court is bound by circuit precedent. Absent a clear pronouncement from a higher court with respect to the bar at issue here, this court must conclude that Nev. Rev. Stat. § 34.810 was not an adequate bar to federal review at the time of Wilson's default.

As for Nev. Rev. Stat. § 34.726, however, the Ninth Circuit has rejected the argument that

5

the Nevada Supreme Court inconsistently applied the procedural bar for time periods up to 1996. *See Loveland v. Hatcher*, 231 F.3d 640, 642–63 (9th Cir. 2000) (as of 1993); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (as of 1996).  There have been no Ninth Circuit decisions finding the bar inadequate as a general matter.

Wilson contends that the Nevada Supreme Court, in several instances, has addressed the merits of habeas claims despite the clear applicability of the timeliness bars.  In support of this argument, he cites to several published and unpublished opinions as purported examples of such.  In particular, he focuses on *Rippo v. State*, 146 P.3d 279 (Nev. 2006).

In *Rippo*, the court addressed whether a certain penalty phase jury instruction regarding the consideration of mitigating circumstances was improper. 146 P.3d at 285.  Ostensibly, the Nevada Supreme Court raised the issue *sua sponte* long after the time limit imposed by Nev. Rev. Stat. § 34.726 had expired.

Placed in context, however, the state supreme court's consideration of the issue has little, if any, bearing on whether § 34.726 is consistently applied.   The state petition for writ of habeas corpus that gave rise to the appeal in *Rippo* was, in fact, filed in a timely manner.  *Id*. at 282.  The state district court had already denied Rippo's petition when the Nevada Supreme Court announced the rule in *McConnell v. State*, 102 P.3d 606 (Nev. 2004).[4]  The Nevada Supreme Court found good cause for Rippo raising a *McConnell*-based claim on appeal, as opposed to returning to the lower court, because the legal basis for the claim "was not available at the time he pursued his habeas petition in the district court" and because the claim "present[ed] questions of law that [did] not require factual determinations outside the record."  *Rippo*, 146 F.3d. at 283 (internal citations omitted).

The suggestion that the Nevada Supreme Court disregarded Nev. Rev. Stat. § 34.726 in

---

[4] In *McConnell*, the Nevada Supreme Court ruled that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated." *McConnel*l, 102 P.3d at 624.

raising the jury instruction issue *sua sponte* after the one-year time limit is misleading because the issue was ancillary to the court's adjudication of Rippo's *McConnell* claim. The court addressed the issue, not as a freestanding ground for relief, but because of the issue's potential impact on the court's harmless error analysis. *See id.* at 285, 287-88. Thus, rather than arbitrarily overlook statutory default rules, the Nevada Supreme Court merely considered the impact of the defective the jury instruction in the process of ruling upon a habeas claim (i.e., Rippo's *McConnell* claim) that had been raised in a manner consistent with Nevada law.

Wilson's reliance on *Middleton v. Warden*, 98 P.3d 694 (Nev. 2004) is similarly misplaced. In *Middleton*, the Nevada Supreme Court merely gave the petitioner another opportunity to re-litigate his initial (and timely) state post-conviction proceeding with a new attorney after finding that his existing attorney had "repeatedly violated this court's orders and procedural deadlines" and submitted work product that was "wholly substandard and unacceptable." 98 P.3d at 696-98.

As for the remaining cases Wilson cites, they show, at most, that the Nevada Supreme Court, in some instances, may exercise its discretion to bypass an applicable procedural bar to reach the merits of a claim or claims. The court's exercise of discretion in these isolated cases does not necessarily render the rule inadequate to support a state decision in other cases. *See Walker*, 562 U.S. at 320.

In summary, Wilson has not placed the adequacy of §34.726 at issue, as required by *Bennett*. *See King*, 464 F.3d at 967 (noting that when the Ninth Circuit has "already made a determination regarding the adequacy of the state procedural rule, the petitioner's method of placing the defense in issue must be modified"); *see also Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (holding that petitioner had not met his burden because the court had already held the state procedural rule to be consistently applied and the petitioner failed to cite cases demonstrating subsequent inconsistent application). Accordingly, this court concludes that Nev. Rev. Stat. § 34.726 was a "clear, consistently applied, and well-established" procedural rule at the time of Wilson's default.

Because Wilson did not present Claims 27 through 30 until his third or fourth state post-conviction proceeding, those claim are procedurally defaulted for the purposes of federal review. Moreover, Wilson has not demonstrated that the default of those claims should be excused under either a cause and prejudice theory or an actual innocence theory.

    2. *Timeliness*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id.* Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

Respondents argue that the federal petition Wilson filed in 1998 is barred as untimely because it was filed more than a year after the AEDPA statute of limitations took effect. *See Miles v. Prunty*, 187 F.3d 1104, 1105 (9th Cir. 1999), (holding that, because AEDPA became law on April 24, 1996, a prisoner with a state conviction finalized before that date had until April 23, 1997 to file a federal habeas petition). Wilson was litigating his second state post-conviction proceeding from 1993 until he filed his 1998 petition.[5] Even so, respondents argue that he is not entitled to statutory tolling for that proceeding because it was not "properly filed" in light of the Nevada Supreme Court's determination that, except for state law claims under *Crump v. Warden*, 934 P.2d 247 (Nev. 1997), it was a successive petition.

In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the U.S. Supreme Court held that a state habeas petition rejected by a state court as untimely was not "properly filed" for purposes of §

---

[5] The United States Supreme Court denied certiorari on October 5, 1998. *Wilson v. Nevada*, 525 U.S. 891 (1998).

1  2244(d)(2).  The Court had previously held that a petition is "properly filed" "when its delivery and
2  acceptance are in compliance with the applicable laws and rules governing filings."  *Artuz v. Bennett*,
3  531 U.S. 4, 8 (2000).  In *Artuz*, the Court held that a state court motion to vacate judgment of
4  conviction was "properly filed" even though it contained claims that were procedurally barred under
5  New York law.  In so holding, the Court noted that "the question whether an application has been
6  'properly filed' is quite separate from the question whether the claims contained in the application
7  are meritorious and free of procedural bar."  *Id*. at 9.

8  Respondents note that the holding in *Artuz* was premised the distinction between a
9  procedural rule that governed the filing an *application* for post-conviction relief as opposed to the
10  procedural requirements that applied *individual claims* within the application with the rationale
11  being that procedurally defective claims within an application should not prevent the application
12  from being "properly filed" for the purposes of § 2244(d)(2).  According to respondents, *Pace*
13  rejected this distinction, meaning that a rule that applied to individual claims, rather than the
14  application as a whole, could prevent those claims from being "properly filed."  Respondents
15  contend, therefore, that because all of the federal claims in Wilson's 1993 state petition were barred
16  as successive under Nev. Rev. Stat. 34.810, he is not entitled to statutory tolling for that proceeding.

17  While appreciating the logic of respondents' argument, this court remains bound by *Artuz*'s
18  rule that a petition rejected as successive may nonetheless be a "properly filed" petition.  *Pace*
19  addressed a specific question reserved for decision in *Artuz*, that being "'whether the existence of
20  certain exceptions to a timely filing requirement can prevent a late application from being considered
21  improperly filed.'"  *See Pace*, 544 U.S. at 413 (quoting *Artuz*, 531 U.S. at 8, n.2).  This court does
22  not read *Pace* as extending beyond state timeliness restrictions (*see id*. at 417 ("[W]e hold that time
23  limits, no matter their form, are 'filing' conditions.")) and, therefore, concludes that Wilson is
24  entitled to statutory tolling for his 1993 state post-conviction petition.  Consequently, his 1998
25  federal petition was timely filed in this court.

26

Respondents also argue that, regardless of whether Wilson's 1998 federal petition was timely filed, Claims 27, 28, 29, and 30 are untimely because the first any of these claims appeared was in Wilson's 2001 amended petition and they do not "relate back" to a timely-filed petition. The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). In *Mayle*, the Court held that the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now Rule 15(c)(1)(B)),[6] which allowed an amendment to a habeas petition to "relate back" to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad. *Id*. at 656-57. The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Id*. at 663-64. The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief. *Id*. at 661.

Claim 27 is a claim that Wilson is factually and legally innocent of the all the charges of which he stands convicted. Whether a freestanding claim of actual innocence is cognizable on federal habeas review is an "open question." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009). Even assuming that actual innocence claims are cognizable, Wilson does not support his with a "core of operative facts." Instead, he merely "incorporates by reference all relevant facts and allegations in related claims." ECF No. 134, p. 217. Pleading the claim in this fashion is not sufficient to establish relation back. Claim 27 is untimely.

Claims 28, 29, and 30 are the aforementioned *Apprendi*, *McConnell*, and *Polk* claims, respectively. For each, Wilson argues that the claim is timely because it was filed within one year of

---

[6] Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

the relevant decision.⁷  28 U.S.C. § 2244(d)(1)(C) provides that a habeas corpus petition is timely if filed within one year of the Supreme Court's recognition of a new constitutional right made retroactively applicable to cases on collateral review.  None of the three claims meets the criteria for this provision.  Thus, they are all untimely.

                3.  *Failure to state a claim*

Respondents assert that Claims 1(A)(a- d), 1(C), 1(D), 1(E), 3, 7, 8, 10, 11, 12, 13, 17, 18, 21, 23, 24, 25, 26, 27, 29, and 30 should be dismissed because they fail to state a claim upon which relief can be granted.⁸

A petition for writ of habeas corpus under 28 U.S.C. § 2254 cannot rely upon mere "notice" pleading, as may be found in other civil cases in the United States District Courts.  *Blackledge v. Allison,* 431 U.S. 63, 75 n. 7 (1977) (*citing* Advisory Committee Note to Rule 4, Rules Foll. Cases under 28 U.S.C. § 2254).  The petition must instead contain particularized facts "that point to 'a real possibility of constitutional error.'"  *O'Bremski v. Maass*, 915 F.2d 418, 420 (9ᵗʰ Cir. 1990) (sources omitted).  The facts alleged in the petition must be sufficient in detail to allow the court to determine whether the petition should be summarily dismissed, or should be given further review.  *Adams v. Armontrout,* 897 F.2d 332, 334 (8ᵗʰ Cir. 1990) (factual details sufficient to support claims must be present *on the face of the petition*).

Claims 1(A) (and its subparts a, b, c, and d), 1(C), 1(D), and 1(E) are claims that counsel rendered ineffective assistance for failing to investigate Wilson's alleged "innocence."  Respondents argue that none of these claims specifies any facts regarding the mandatory prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52 (1985).

---

⁷ For the *Apprendi* claim, Wilson cites to *Ring v. Arizona*, 536 U.S. 584 (2002), which applied the holding in *Apprendi* to capital sentencing.

⁸ Respondents also assert that Claims 19, 20, 22, and 28 each fail to state a cognizable federal habeas claim.  Wilson concedes this is the case.  ECF No. 171, pp. 113 and 117.

11

1    Respondents also argue that Claim 1(C) is defective because it alleges that counsel was ineffective
2    for failing to investigate and present mitigating evidence in the *guilt* phase of Wilson's trial and that
3    1(E) is defective because it claims that counsel's deficient performance was prejudicial *per se* but
4    does not allege facts meeting the applicable standard in *United States v. Cronic*, 466 U.S. 648
5    (1984).
6           As to the latter arguments, this court agrees that Claim 1(C) and 1(E) fail to allege
7    particularized facts that point to a real possibility of constitutional error.  While counsel may have
8    been obliged to conduct an investigation of potential mitigating evidence prior to the conclusion of
9    the guilt phase of Wilson's criminal proceeding, Wilson has not alleged facts showing that, but for
10   counsel's failure develop evidence relevant to sentencing, Wilson would have insisted on going to
11   trial in the guilt phase. *See Hill*, 474 U.S. at 59.  Moreover, Wilson's allegation of ineffective
12   assistance of counsel in the penalty phase is set forth in detail under Claim 9 of his petition.
13          With respect to Claim 1(E), the allegations of defective performance by counsel are the type
14   subject to the rule in *Strickland* and not the one in *Cronic*. *See Bell v. Cone*, 535 U.S. 685, 697-98
15   (2002) ("For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this
16   difference is not of degree but of kind.").  That is, they do not allege circumstances showing that
17   "counsel *entirely* fail[ed] to subject the prosecution's case to meaningful adversarial testing."
18   *Cronic*, 466 U.S. at 659 (emphasis added).
19          Thus, Claims 1(C) and 1(E) do not state a claim upon which habeas relief can be granted.
20          As for Claims 1(A) and 1(D), they are sufficiently plead.  Respondents complain that the
21   claims do not sufficiently set out the nexus between the information counsel failed to discover and
22   the actual impact it would have had on the petitioner's plea decision.  Respondents also contend that
23   the underlying facts (i.e., the information counsel failed to discover) must be accurate.
24          Claim 1(A) alleges that counsel was ineffective by not investigating certain information that
25   would have established that Wilson was not guilty of capital murder.  Whether Wilson will be able
26

to demonstrate that counsel would have been able to obtain the allegedly exculpatory evidence identified in Claim 1(A) has yet to be determined. But, if it turns out that he is able to make such a showing, he may also be able to demonstrate that the evidence created a reasonable probability that he would have insisted on going to trial. *See id.* at 59-60. As matter of pleading, therefore, Claim 1(A) survives summary dismissal.

Claim 1(D) alleges that counsel was ineffective by not obtaining an independent evaluation as to the victim's the time of death because such an evaluation would have established that the victim did not live long enough to be kidnaped. In relation to this claim, Wilson alleges that he "would not have been permitted to plead guilty to first degree kidnaping and would not have been sentenced to death because it would have been clear that there existed no factual basis to support the charge of kidnaping." ECF No. 134, p. 89. This is an allegation of prejudice sufficient to allow Wilson to go forward with Claim 1(D).

In Claim 3, Wilson claims the trial court violated his constitutional rights by ignoring his request to withdraw his guilty plea before sentencing and subsequently denying his request to withdraw his guilty pleas after he had been sentenced. Respondents argue the that claim is not cognizable as a federal habeas claim because it challenges a decision of the trial court exercising its discretion under state law. In response, Wilson argues that Claim 3 states a viable federal habeas claim because it alleges facts implicating his constitutional right to a knowing and voluntary plea, because the trial court had an constitutional duty to ensure that his plea was constitutionally valid, and because the trial court was constitutionally obligated to hold a hearing when Wilson sent a letter to the trial court indicating that he was changing his plea.

Claims 2, 4, 5, and 6 of Wilson's petition state cognizable claims challenging the constitutional validity of his guilty pleas. Respondents are correct, however, that Claim 3 challenges the state trial court's adjudication of (or failure to adjudicate) Wilson's alleged efforts to withdraw his guilty pleas, which is separate from the question of whether the pleas were constitutionally valid.

Because there is no federal law violation arising from the allegations contained in Claim 3, it fails to state a claim upon which habeas relief can be granted.

Claim 7 alleges that trial counsel labored under an actual conflict of interest that adversely affected his performance because counsel had a friendship with the victim and also had social relationships with law enforcement and prosecutors on this case, which counsel allowed to affect his representation of Wilson. Absent objection, a defendant must demonstrate that "a conflict of interest actually affected the adequacy of his representation." *Cuyler v. Sullivan*, 446 U.S.335, 348–349 (1980). Where, as here, there is no allegation that Wilson raised a timely objection to counsel's representation, he must allege facts demonstrating that an *actual* conflict of interest adversely affected his lawyer's performance. *See Mickens v. Taylor*, 535 U.S. 162, 171 (2002) ("'[A]n actual conflict of interest' mean[s] precisely a conflict that *affected counsel's performance* – as opposed to a mere theoretical division of loyalties."). Because Wilson alleges fact showing nothing more than a theoretical division of loyalties, Claim 7 shall be summarily dismissed.

Claim 8 alleges a conflict of interest due to counsel previously representing a key prosecution witness who testified in the penalty phase of Wilson's trial. On the face of the petition alone, Claim 8 states a cognizable claim for federal habeas relief. The merits of the claim, including the validity of any waiver of the conflict of interest, will be addressed after the issue has been briefed by the parties.

Claim 10 alleges a violation of constitutional rights arising from the admission of evidence of unadjudicated criminal conduct in the penalty phase of Wilson's trial. Respondents point out that the admission of such evidence in that context does not violate the Constitution. *See McDowell v. Calderon*, 107 F.3d 1351, 1366 (9th Cir. 1997) (noting that the sentencer "may rely on criminal conduct not resulting in a conviction if the evidence has some minimal indicium of reliability beyond mere allegation"). Wilson offers no argument in response. Claim 10 shall be dismissed.

Claim 11 claims that Wilson's constitutional rights were violated because the decision to

seek the death penalty was motivated by prosecutorial vindictiveness. As the basis for this claim, Wilson alleges the State sought the death penalty only because the victim was a police officer. No legal authority supports granting habeas relief based on the allegations in Claim 11. The claim shall be dismissed.

Claim 12 alleges that Wilson's constitutional rights were violated because the prosecution wrongfully withheld information concerning a man named Bud, who Wilson claims "conceiv[ed] the scheme which resulted in a chain of events leading to the killing" and "advised [him] regarding how to deal with the deceased and how to conduct the cocaine sale." ECF No. 134, p. 144. Claim 13 alleges that the State destroyed or failed to preserve exculpatory evidence – in particular, a mattress from a motel room used by Wilson's co-defendants and an audio tape made by police with a transmitter in the victim's car. Respondents argue that Claim 12 and 13 fail to allege facts establishing the necessary elements for a constitutional claim – those being the materiality of the evidence and bad faith.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the State is obligated by the requirements of due process to disclose *material exculpatory* evidence to the defense. Under *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), the failure to preserve *potentially useful* evidence may constitute a denial of due process of law if the defendant can show bad faith on the part of the police. Which elements apply to each claim depends on whether it is treated as a *Brady* claim or a *Youngblood* claim. For example, if Claim 13 is analyzed as a *Youngblood* claim, Wilson would not necessarily need to demonstrate that the evidence at issue was material exculpatory evidence (only potentially useful evidence), but he would need to demonstrate that the police acted in bad faith in failing to preserve the evidence.

The viability of Claims 12 and 13 under these standards is a matter of proof, not pleading. Thus, the Claims shall not be dismissed for failure to state a claim for relief.

Claim 17 alleges that Wilson's constitutional rights were violated due to the improper

admission of hearsay testimony of inmate-witnesses and the statements of co-defendants in the penalty phase of his trial. There is no controlling legal authority providing that the admission of such evidence in the penalty phase of a capital trial violates a defendant's constitutional rights. Wilson concedes as much in opposing respondents' motion to dismiss, but argues that "circuit courts of appeal have begun determining that . . . United States Supreme Court capital case jurisprudence demonstrates that 'the right to cross-examine adverse witnesses applies to capital sentencing hearings.'" ECF No. 171, p. 131 (citing *Proffit v. Washington*, 685 F.2d 1227, 1254 (11th Cir. 1982)). Be that as it may, Claim 17 does not, at this point in time, state a claim upon which habeas relief may be granted.

Claim 18 alleges that Wilson was denied the right to adequate state-paid assistance in preparing a defense, which resulted in a violation of his constitutional rights. Respondents point out, correctly, that the claim contains no allegation that Wilson ever made a request for such assistance that the state court denied. Accordingly, Claim 18 is dismissed. *Cf. Ake v. Oklahoma*, 470 U.S. 68, 72 (1985) (finding violation of defendant's constitutional rights where the trial judge rejected defense counsel's request that an indigent defendant receive the assistance of a psychiatrist when that assistance was necessary to the defense).

Claim 21 alleges that it was constitutionally impermissible for the three-judge panel in Wilson's penalty phase to find two distinct aggravating factors – i.e., that the murder was committed while the defendants were engaged a robbery and that the murder was committed for the purpose of receiving money – based upon the one incident of taking of $16,000.00 from the deceased. Wilson also alleges in Claim 21 that it was error for the sentencing court to find kidnaping as an aggravating circumstance. In addition, Wilson contends that the Nevada Supreme Court's review of death penalty cases is constitutionally inadequate because the court does not comply with Nev. Rev. Stat. §177.055(2) in conducting its review.

Claim 23 alleges Wilson's death sentence is unconstitutional because the Nevada Supreme

Court failed to conduct an adequate proportionality review, as required by Nev. Rev. Stat. §177.055(2)(d), and omitted addressing the assignment of error regarding proportionality in its initial decision on direct appeal. In particular, Wilson contends the imposition of the death sentence in his case was disproportionate to lesser sentences in factually similar cases and to his co-defendants' sentences, especially given that he was the only defendant who did not stab the deceased.

The errors alleged Claims 21 and 23 are premised entirely on state law. The claims shall be dismissed. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Claim 24 alleges Wilson's death sentence is unconstitutional because the judge who rendered the death sentence and rejected the request to withdraw the guilty pleas lacked the requisite impartiality to participate in any proceedings relating to Wilson.

To prevail on a judicial bias claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). In *Liteky v. U.S.*, 510 U.S. 540 (1994), the majority opinion discusses at length the circumstances under which judicial bias or prejudice requires recusal of a presiding judge. *Id.* at 544-56. Although the discussion was ultimately concerned with the proper interpretation of a federal recusal statute (28 U.S.C. § 455), the Ninth Circuit has relied on the principles set forth in *Liteky* in determining whether a habeas petitioner has a meritorious Fourteenth Amendment claim for deprivation of a fair trial based on judicial bias. *See, e.g., Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008); *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir.1997) (applying *Liteky* to judicial bias claim in death penalty case).

Among the oft-cited principles discussed in *Liteky* is that bias can "almost never" be demonstrated solely on the basis of a judicial ruling. 510 U.S. at 555. In essence, where there is no allegation that an extrajudicial source of prejudice, a judge's actions occurring in the course of a judicial proceeding will be grounds for a judicial bias claim only if they "display a deep-seated

favoritism or antagonism that would make fair judgment impossible." *Id*.

Wilson alleges no facts suggesting that Breen's actions could be objectively classified as an exhibition of "deep-seated favoritism or antagonism that would make fair judgment impossible." As for extrajudicial sources of prejudice, Wilson alleges only that "Judge Breen *may have* attended the funeral of the deceased, had some knowledge of the officer, and engaged in conversations with police officers regarding the deceased before or during the time the case was pending before him." ECF No. 134, p. 210 (emphasis added). In short, Wilson advances no allegations that are sufficient to overcome a presumption of honesty and integrity in those serving as adjudicators. Claim 24 shall be dismissed.

Claim 25 alleges that Wilson's death sentence is unconstitutional because the death penalty is cruel and unusual punishment and because execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments.

In *Baze v. Rees*, 553 U.S. 35 (2008), the Supreme Court, on an appeal from a judgment in a civil rights action, ruled Kentucky's lethal injection protocol to be constitutional. *Baze*, 553 U.S. at 62-63. The *Baze* holding essentially forecloses any argument that lethal injection, no matter how administered, is necessarily unconstitutional. It also demonstrates that lethal injection can be administered in a manner that does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

To the extent that Wilson challenges the specific protocol employed by the State of Nevada, such a challenge is not cognizable in this federal habeas corpus action. In *Nelson v. Campbell*, 541 U.S. 637 (2004), a state prisoner sentenced to death filed a civil rights action, under 42 U.S.C. § 1983, alleging that the state's proposed use of a certain procedure, not mandated by state law, to access his veins during a lethal injection would constitute cruel and unusual punishment. *Nelson*, 541 U.S. at 641. The Supreme Court reversed the lower courts' conclusion that the claim sounded in habeas corpus and could not be brought as a section 1983 action. The Supreme Court ruled that

section 1983 was an appropriate vehicle for the prisoner to challenge the particular lethal-injection procedure prescribed by state officials. *Nelson*, 541 U.S. at 645. The Court stated that the prisoner's suit challenging "a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself [because by altering the lethal-injection procedure] the State can go forward with the sentence." *Id*. at 644.

In *Hill v. McDonough*, 547 U.S. 573 (2006), the Court reaffirmed the principles articulated in *Nelson*, ruling that an as-applied challenge to lethal injection was properly brought by means of a section 1983 action. *Hill* 547 U.S. at 580-83. Both *Nelson* and *Hill* suggest that a section 1983 claim is the more appropriate vehicle for an as-applied challenge to a method of execution. *See also Beardslee v. Woodford*, 395 F.3d 1064, 1068-69 (9th Cir. 2005) (holding that claim that California's lethal injection protocol violates the Eighth Amendment "is more properly considered as a 'conditions of confinement' challenge, which is cognizable under § 1983, than as a challenge that would implicate the legality of his sentence and thus be appropriate for federal habeas review.").

Because an as-applied challenge to a method of execution is more akin to a suit challenging the conditions of custody rather than the constitutionality of the petitioner's custody or sentence, it must be brought as a civil rights action under 42 U.S.C. § 1983. This conclusion was reinforced in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), where the Court stated:

> In *Hill*, the issue was whether a challenge to a method of execution must be brought by means of an application for a writ of habeas corpus or a civil action under § 1983. We held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence.

*Glossip*, 135 S. Ct. at 2738 (citations omitted). Thus, Claim Twenty-five, to the extent that it challenges Nevada's specific execution procedures, is subject to dismissal as not cognizable in this federal habeas corpus action.

Finally, Wilson offers no response to respondents' arguments that Claims 26, 27, 29, and 30 all fail to state a cognizable habeas claim. This court concludes that respondents' arguments are

meritorious.[9]  Thus, these claims shall be dismissed.

### 4. *Summary judgment*

Respondents argue that, for several claims, they are entitled to summary judgment because Wilson failed to develop the necessary facts to support the claims in state court and 28 U.S.C. § 2254(e)(2) precludes Wilson from developing those facts in this court.  While respondents may ultimately be correct, this court shall make this determination when it rules upon Wilson's petition on the merits.

IT IS THEREFORE ORDERED that respondents' motion to dismiss (ECF No. 143) is GRANTED in part and DENIED in part.  For the reasons set forth above, Claims 1(C), 1(E), 3, 7, 10, 11, and 17 through 30 are dismissed.

IT IS FURTHER ORDERED that respondents shall have **sixty (60) days** from the date on which this order is entered within which to file their answer to the remaining claims in petitioner's third amended petition (ECF No. 134).  In all other respects, the scheduling of this matter is governed by the scheduling order entered March 23, 2015 (ECF No. 130).

IT IS FURTHER ORDERED that respondents' motion for extension of time (ECF No. 175) is GRANTED *nunc pro tunc* as of December 19, 2016.

DATED: February 9, 2017

_____
UNITED STATES DISTRICT JUDGE

---

[9] Moreover, as noted above, these claims are time-barred and/or procedurally defaulted.